UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 17-CR-20467 |
| | HON. AVERN COHN |
| v. | VIO: 18 U.S.C. § 1349 |
| | 18 U.S.C. § 371 |
| ZAHIR SHAH, | 42 U.S.C. § 1320a-7b |
| Defendant. | 18 U.S.C. § 982 |

_____/

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this First Superseding Indictment:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Medicare was also a "Federal health care program," as defined by Title 18, United States Code, Section 1320a-7b(f).

3. Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency to beneficiaries who required home health services because of an illness, injury, or medical condition that caused them to be homebound. Payments for home health services under Medicare Part A were typically made directly to a home health agency or provider based on claims submitted to Medicare for qualifying services that were provided to eligible beneficiaries, rather than directly to the beneficiaries.

4. Medicare "Part B" covered certain physician services, outpatient services, and other services, that were medically necessary.

5. National Government Services, previously called United Government Services, ("NGS") was the CMS intermediary for Medicare Part A in the state of Michigan. NGS received and processed Medicare Part A claims originating in Michigan in Indianapolis, Indiana.

6. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor ("ZPIC"). The ZPIC is the contractor charged with

investigating fraud, waste, and abuse. Cahaba was replaced by AdvanceMed in May 2015.

### **Medicare Provider Enrollment and Reimbursement**

7. Physicians, home health agencies, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

8. In its Medicare enrollment application, a provider was required to disclose any person who held an ownership interest of 5% or more or who had managing control over the provider.

9. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

10. Medicare providers were provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules

and regulations. Providers could submit claims to Medicare only for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

11. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare number, the services performed, the date and charge for the services, and the name and provider number of the physician or other health care provider who ordered the services.

12. Medicare reimbursed claims for services only if the services were medically necessary and reasonable.

13. Medicare Part A, through a Medicare contractor, reimbursed participating home health agencies for home health services provided to a Medicare beneficiary only if the beneficiary qualified for home health benefits. A beneficiary qualified for home health benefits only if:

    a. the Medicare beneficiary was under the care of a physician who specifically determined a need for home health services and established a plan of care;

    b. the Medicare beneficiary was confined to the home, also referred to as "homebound", and a physician certified that the Medicare beneficiary was homebound; and

c.      the Medicare beneficiary needed, and a physician certified that the beneficiary needed, skilled nursing services, physical therapy, speech therapy, or occupational therapy.

**Federal Anti-Kickback Statute Compliance**

14.     As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal anti-kickback statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

**Relevant Entities and Individuals**

15.     Exceptional Home Health Care Inc. ("Exceptional") was a Michigan corporation doing business at 15565 Northland Drive Suite 306W, Southfield, MI 48075; 31000 Northwestern Highway Suite 145, Farmington Hills, MI 48334; and 20755 Greenfield Road Suite 202, Southfield, MI 48075. Exceptional was a home health agency that purportedly provided in-home skilled nursing services, physical therapy, speech therapy, and occupational therapy to patients. Exceptional was a Medicare provider and submitted claims directly to Medicare.

16. Mobility Home Health Care, Inc. ("Mobility") was a Michigan corporation doing business at 20755 Greenfield Road Suite 202, Southfield, MI 48075. Mobility was a home health agency that purportedly provided in-home skilled nursing services, physical therapy, speech therapy, and occupational therapy to patients. Mobility was a Medicare provider and submitted claims directly to Medicare.

17. A.R. Therapy Services Inc. ("A.R. Therapy") was a Michigan corporation doing business at 27243 Southfield Road, Lanthrup Village, MI 48076 and 20755 Greenfield Road Suite 200, Southfield, MI 48075.

18. Motion Transportation Inc. ("Motion Transportation") was a Michigan corporation doing business at 27243 Southfield Road, Lanthrup Village, MI 48076 and 20755 Greenfield Road Suite 200, Southfield, MI 48075.

19. Sana Kassab, a resident of Oakland County, Michigan, was a Medicare beneficiary recruiter.

20. Johnny Younan, a resident of Macomb County, Michigan, was a Medicare beneficiary recruiter.

21. Rizwan Qadir, M.D., a resident of Oakland County, Michigan, was a physician who certified Medicare beneficiaries to receive home health services.

**The Defendant**

22.     ZAHIR SHAH, a resident of Oakland County, Michigan, was a licensed physical therapist. ZAHIR SHAH owned, operated, and controlled Exceptional, A.R. Therapy, and Motion Transportation, among other corporate entities. ZAHIR SHAH operated and controlled Mobility.

**COUNT 1**
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

23.     Paragraphs 1 through 22 of this First Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

24.     Beginning in or around 2007 and continuing through in or around July 2017, the exact dates being unknown to the Grand Jury, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendant, ZAHIR SHAH, did willfully and knowingly combine, conspire, confederate, and agree with Sana Kassab, Johnny Younan, Rizwan Qadir, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

   a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

      b.    to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

25.    It was a purpose of the conspiracy for ZAHIR SHAH and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for home health services that were medically unnecessary and not eligible for reimbursement; (b) soliciting, receiving, offering, and paying kickbacks and bribes for the purpose of referring Medicare beneficiaries for services that were not eligible for Medicare reimbursement; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment

of kickbacks and bribes; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators.

## Manner and Means of the Conspiracy

26. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

27. On or about January 4, 2008, November 5, 2008, July 20, 2009, August 9, 2010, December 17, 2010, March 28, 2011, June 22, 2011, June 11, 2012, and July 23, 2014, ZAHIR SHAH certified to Medicare that he would comply with all Medicare rules and regulations, including that he would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and that he would refrain from violating the federal anti-kickback statute.

28. On or about June 22, 2011, ZAHIR SHAH transmitted and caused to be transmitted one such certification statement from Michigan to NGS in Indianapolis, Indiana, by means of an interstate wire.

29. Notwithstanding these certifications, ZAHIR SHAH offered and paid kickbacks and bribes to Sana Kassab, Johnny Younan, and others in exchange for the referral of Medicare beneficiaries for home health services billed to Medicare.

30. ZAHIR SHAH and others disguised these kickbacks and bribes as payments for transportation and translation services, among other things.

31. ZAHIR SHAH, Sana Kassab, Johnny Younan, Rizwan Qadir, and others devised and participated in a scheme to certify and cause to be certified Medicare beneficiaries for home health services without regard for medical necessity.

32. ZAHIR SHAH and others disguised ZAHIR SHAH's ownership interest in and control of Mobility by, among other things, entering into a sham agreement and making misrepresentations in a provider enrollment application submitted to Medicare.

33. ZAHIR SHAH submitted and caused to be submitted, through interstate wires, approximately $8 million in false and fraudulent claims to Medicare for home health services. These claims were procured through kickbacks and bribes and, oftentimes, were for services that were medically unnecessary and not eligible for Medicare reimbursement.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

34. Paragraphs 1 through 22 and 26 through 33 of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

35.  Beginning in or around 2007 and continuing through in or around July 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, defendant ZAHIR SHAH did willfully and knowingly combine, conspire, confederate, and agree with Sana Kassab, Johnny Younan, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

    a.  to knowingly and willfully solicit or receive any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b), in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

    b.  to knowingly and willfully offer or pay any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash, in check, or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b), in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## Purpose of the Conspiracy

36. It was a purpose of the conspiracy for defendant ZAHIR SHAH and his co-conspirators to unlawfully enrich themselves and others by offering, paying, soliciting, and receiving kickbacks and bribes in exchange for Medicare beneficiary referrals for home health services paid for by Medicare.

## Manner and Means of the Conspiracy

37. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

38. ZAHIR SHAH and others paid and caused the payment of kickbacks and bribes to Sana Kassab, Johnny Younan, and others in exchange for Medicare beneficiary referrals.

39. ZAHIR SHAH and others disguised the kickbacks and bribes to Sana Kassab, Johnny Younan, and others as payments for transportation and translation services, among other things.

40. ZAHIR SHAH and others submitted and caused the submission of claims to Medicare through Exceptional and Mobility for home health services that were purportedly provided to Medicare beneficiaries who were referred through kickbacks and bribes.

41. Medicare paid Exceptional and Mobility based upon claims for home health services purportedly provided Medicare beneficiaries who were referred through kickbacks and bribes.

### Overt Acts

42. In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

43. On or about April 26, 2013, ZAHIR SHAH paid and caused to be paid check number 1377, in the amount of $2,200, from A.R. Therapy to Johnny Younan in exchange for Johnny Younan referring Medicare beneficiaries for home health services;

44. On or about November 7, 2013, ZAHIR SHAH paid and caused to be paid check number 3217, in the amount of $5,500, from Exceptional to Johnny Younan in exchange for Johnny Younan referring Medicare beneficiaries for home health services;

45. On or about January 3, 2014, ZAHIR SHAH paid and caused to be paid check number 8250, in the amount of $700, from Motion Transportation to 24 Hour Translation in exchange for Sana Kassab referring Medicare beneficiaries for home health services; and

46. On or about January 22, 2014, ZAHIR SHAH paid and caused to be paid check number 1581, in the amount of $700, from A.R. Therapy to 24 Hour Translations in exchange for Sana Kassab referring Medicare beneficiaries for home health services.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 3-6
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2))

47. Paragraphs 1 through 20, 22, and 36 through 41 of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

48. On or about the dates enumerated below, in the Eastern District of Michigan and elsewhere, defendant ZAHIR SHAH did knowingly and willfully offer and pay remuneration, that is kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of checks, to a person in order to induce the person to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program as defined by Title 18, United States Code, Section 1320a-7b(f), that is, Medicare, as set forth below:

| Count | Approximate Date | Amount | Description |
|---|---|---|---|
| 3 | April 26, 2013 | $2,200 | Check #1377 from A.R. Therapy (signed by ZAHIR SHAH) to Johnny Younan |
| 4 | November 7, 2013 | $5,500 | Check #3217 from Exceptional (signed by ZAHIR SHAH) to Johnny Younan |
| 5 | January 3, 2014 | $700 | Check #8250 from Motion Transportation (signed by ZAHIR SHAH) to 24 Hour Translation (delivered to Sana Kassab) |
| 6 | January 22, 2014 | $700 | Check #1581 from A.R. Therapy (signed by ZAHIR SHAH) to 24 Hour Translations (delivered to Sana Kassab) |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

## FORFEITURE ALLEGATIONS

### 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461

49.     The above allegations contained in this First Superseding Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461.

50.     As a result of the violations of 18 U.S.C. §§ 371, 1347, and/or 42 U.S.C. § 1320a-7b, as set forth in this First Superseding Indictment, defendant ZAHIR SHAH shall forfeit to the United States any property, real or personal, that

15

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7).

51. As a result of the violations of 18 U.S.C. §1349, as set forth in this First Superseding Indictment, defendant ZAHIR SHAH shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 981 with 28 U.S.C. § 2461.

52. <u>Money Judgment:</u> Such property includes, but is not limited to, forfeiture money judgments in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of defendant ZAHIR SHAH's violations, as alleged in this First Superseding Indictment.

53. <u>Substitute Assets:</u>  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9583
wayne.pratt@usdoj.gov

s/DUSTIN DAVIS
DUSTIN DAVIS
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Eighth Floor
Washington, D.C. 20005
(504) 680-3000
dustin.davis@usdoj.gov

s/REBECCA SZUCS
REBECCA SZUCS
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Eighth Floor
Washington, D.C. 20005
(202) 262-3520
rebecca.szucs@usdoj.gov

s/HOWARD LOCKER
HOWARD LOCKER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Eighth Floor
Washington, D.C. 20005
(313) 226-9642
howard.locker@usdoj.gov

Date: March 22, 2018

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>17-cr-20467 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: *RS* |

**Case Title:** USA v. Zahir Shah

**County where offense occurred:** Oakland County, Wayne County

**Check One:**   ☒ Felony    ☐ Misdemeanor    ☐ Petty

____Indictment/____Information --- **no prior complaint.**
____Indictment/____Information --- **based upon prior complaint** [Case number:                    ]
__✓__Indictment/____Information --- **based upon LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 17-cr-20467        **Judge:** Avern Cohn

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Zahir Shah | 18 U.S.C. § 1349<br>18 U.S.C. § 371<br>42 U.S.C. § 1320a-7b<br>18 U.S.C. § 982 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 22, 2018         *Rebecca Szucs*
       Date

Rebecca Szucs, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 262-3520
Fax:    (313) 226-9574
E-Mail address: Rebecca.Szucs@usdoj.gov
Attorney Bar #: NY 5346861

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.