UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 2:17-cr-20467-AC-EAS
                                                   Hon. Avern Cohn

ZAHIR SHAH,

        Defendant(s),

## DEFENDANT'S SENTENCING MEMORANDUM

## INTRODUCTION

On May 17, 2018, Zahir Shah pled guilty to conspiracy to commit wire and healthcare fraud and conspiracy to pay health care kickbacks. His plea was taken without the benefit of a Rule 11 agreement due to a disagreement between the parties as to the following issues: (1) the correct loss amount to be attributed to him; (2) the applicability of a leadership enhancement.

The Probation Department recommended a sentencing guideline range of 151-188 months based on a total offense level of 34 and a criminal history category of I. In arriving at the guideline range, the Probation Department applied a 3-level leadership enhancement. The Probation Department also awarded Mr. Shah only a 2-level reduction for acceptance of responsibility, stating that the extra 1-level reduction was entirely up to the government.

The defense disagrees with the Probation Department's guideline calculation, and contends that the correct sentencing guideline range is 46-57 months based on a total offense level of 23 and a criminal history category of I.

1

Sentencing is scheduled for January 21, 2019. The purpose of this memorandum is to request that the Court: (a) find that the correct loss amount with respect to Mr. Shah is $250,000-$550,000; (b) rule that Mr. Shah's sentencing guideline range is 46-57 months; and (c) impose a fair sentence on him after consideration of all of the sentencing factors listed in 18 USC §3553(a).

Defendant was initially indicted for violations of 18 USC § 1349, conspiracy to commit health care fraud (an offense carrying up to 10 years in prison, conspiracy to pay and receive health care kickbacks (18 USC § 371, which carries up to five years in prison) and 4 individual counts of paying kickbacks in connection with a federal health care program (42 USC§ 1320 a-7 b (2)). When a negotiated settlement wasn't happening quickly enough for the prosecution they amended count one to add wire fraud language to the health care fraud count so as to double the maximum statutory penalty from 10 years to 20 years. The superseding indictment did not allege any additional wrongful behavior. This was done two and a half months before the trial date. When this Court arraigned Mr. Shah on the superseding indictment the court ordered disclosure of Jencks statements and evidence to the defense at least 30 days before trial, so that counsel could review it with Mr. Shah and advise him how best to proceed. The government did as the court ordered, on May 3, 2018. Two weeks later on May 17, 2018 Defendant appeared before the court and pled guilty to counts one and two. His plea was taken without the benefit of a rule 11 agreement due to a disagreement between the parties as to (1) loss amount and (2) applicability of leadership enhancement.

The government and the defense agreed that paying referral fees (kickbacks) to marketers who brought physical therapy patients to Mr. Shah violated both the conspiracy to commit health care and wire fraud law and the more specific conspiracy to pay and receive health care

kickbacks law. In making his guilty plea to these counts, Mr. Shah's factual basis described his act of paying kickbacks.

Before taking the plea the Court asked:

The Court:   All right. What's the difference between count 1 and count 2?

Mr. Mullkoff:   Count one – they are almost identical. However, count 1 is wire fraud. Count 2 is a separate statute, the Federal Anti-Kickback Statute, so the conduct can violate both because the added element of using Wire Fraud doesn't exist in the other charge.
(Plea transcript at 5).

What follows is Defendant's factual basis for his plea:

Mr. Mullkoff: All right. Were you a person who was registered to be a health care provider with Medicare so that you could bill Medicare for physical therapy services?

The Defendant:  Yes.

Mr. Mullkoff:  And with respect to Count 1, the Wire Fraud count, did you conspire with others, including Sana Kassab and Johnny Younan, to carry out a scheme to defraud the health care benefit program, Medicare Fraud, and do you agree that that affected commerce?

The Defendant:  Yes.

Mr. Mullkoff:  Did you develop a scheme with them to, by means of false statements, cause to be transmitted in interstate commerce communications, writings for the purpose of billing and carrying out this conspiracy?

The Defendant:  Yes.

Mr. Mullkoff:  Was one of the purposes of the conspiracy for you to pay kickbacks for the purpose of having Medicare patients referred to you?

The Defendant:  Yes.

Mr. Mullkoff:  And you know from a document you signed that you were ineligible to bill for Medicare if you received referral fees or kickbacks from a third party, right?

The Defendant: Yes.

Mr. Mullkoff:  And you diverted the money that you received from Medicare for your own personal use and the benefit of your coconspirators, correct?

The Defendant: Yes.

Mr. Mullkoff:  You signed a certification that you would refrain from violating the Antikickback law?

The Defendant:  Yes.

Mr. Mullkoff:  On June 2 of 2011 you had that certificate transmitted by means of interstate wire?

The Defendant: Yes.

Mr. Mullkoff:  And, notwithstanding the certification, you did pay money to Sana Kassab and Johnny Younan and others in exchange for the referral of Medicare beneficiaries for home health care services billed to Medicare?

The Defendant:  Yes.

Mr. Mullkoff:  Judge, I believe that's an adequate factual basis for Count 1. Can I go on to Count 2?

The Court:  Go ahead.

Mr. Mullkoff:  With respect to count 2, you are pleading guilty to conspiring to pay health care kickbacks, correct?

The Defendant:  Yes.

Mr. Mullkoff:  And with these same individuals you just named did you knowingly pay money to them for referring an individual or individuals to arrange for physical therapy services that would be billed in whole or part by Medicare?

The Defendant:  Yes.

Mr. Mullkoff:  And you caused payments to be made by them on some specific dates?

The Defendant:  Yes.

Mr. Mullkoff:  I'll ask you to confirm these three transactions. Is it true that on April 26, 2013 you transmitted $2,200 to Johnny Younan in exchange for his referring Medicare beneficiaries to you for home health services?

The Defendant:  Yes.

Mr. Mullkoff:  On November 7, 2013 is it true that you transferred $5,500 to him, the same individual, for referring Medicare beneficiaries for home health care physical therapy?

The Defendant:  Yes.

Mr. Mullkoff:  Judge, I think that's a factual basis to both counts.

The Court:  Is the government satisfied or do they have any questions?

Ms. Szucs:  Your Honor, the government is satisfied, and I would just like to clarify that Count 1 is Conspiracy to Commit Health Care Fraud and Wire Fraud.

Mr. Mullkoff:  That's correct.

The Court:  A combination?

Mr. Mullkoff:  Yeah.

Ms. Szucs:  And one more question, Your Honor. Did you do all of this in the Eastern District of Michigan?

The Defendant:  Yes.

(Plea transcript pages 12-15).

At the end of the plea proceeding the Court told the government that he expected their memorandum to "include a study of comparative offenses in the sentences imposed, particularly in this district." (Plea transcript at 16).

### Treatment of comparable defendant's paying or receiving kickbacks for referrals in this district.

This is not the first time this Court has seen a case of this nature. An eight defendant Medicare kickback conspiracy indictment (USA v. Rebecca Sharp, et al. 08-20668, Exhibit 1) was transferred to this Court from Judge Battani. The 14 count indictment described various acts of receiving and paying kickbacks for referrals of patients to receive Medicare funded home health care services. Rebecca Sharp received kickbacks from seven home health care agencies. After accepting her referrals the home health agencies billed Medicare for various services. She received $1,110,000 in kickbacks.

She pled to the five year felony: Conspiracy to Commit the Crime of Violating the Health Care Antikickback Statute (42 USC 1320 a(7)b(1)a and b(2)b.

Rule 11 guidelines for Sharp:

| | |
|---|---|
| 2B4.1(a) Bribery-based offense level | 8 |
| 2B4.1(b)(B) value of improper benefit exceeded $5,000 | |
| 2B1.1(b)(1)(I) more than $1,000,000 in improper benefit | 16 |
| Adjusted offense level | 24 |
| Acceptance of Responsibility | -3 |
| Total Offense Level: | 21 |

This Court sentenced her to serve 18 months in prison. (See Exhibit 2).

The other seven defendants were actual health care providers who were all originally charged with the same 5 year Conspiracy to Violate the Antikickback Statute. What follows below is a summary of the negotiated resolutions between the defense and the government and Judge Avern Cohn's sentences for those remaining co-defendants:

D-4 Kevin Watson – misdemeanor false statement to federal health care program – 3 years probation, and $933,000 restitution. (See Exhibit 3).

D-5 Jacqueline Jackson – misdemeanor false statement to federal health care program – 2 years probation and $933,000 restitution. (See Exhibit 4).

D-2 Nancy Razalan – misdemeanor false statement to federal health care program – 3 years probation and $225,000 restitution. (See Exhibit 5).

D-6 Hafiz Anjum – misdemeanor false statement to federal health care program – 3 years probation and $100,000 restitution. (See Exhibit 6).

D-3 Generosa Agustin – misdemeanor false statement to federal health care program – 3 years probation and $80,000 restitution. (See Exhibit 7).

D-7 Michael Gilliam – dismissed after pretrial diversion (See Exhibit 8).

D-8 Edwin McBeth – dismissed after pretrial diversion (See Exhibit 9). [1]

Here in the Eastern District in 2018 corporate hospital violations of the antikickback statute were resolved with the Beaumont Health system by payment of 84.5 million dollars in a civil settlement (See Free Press Article 8-2-18, Exhibit 10).

Uniformly the judge of the Eastern District of Michigan have recognized that the healthcare fraud guidelines are too high, particularly when it comes to calculating loss amount. What follows is a sampling of guideline ranges and sentences imposed in a handful of healthcare fraud sentencings:

---

[1] Information about all of these sentences was provided to Probation at the time of the presentence interview.

| Case Name | Case # | Guideline Range months | Sentence | Judge | Claimed Loss amount |
|---|---|---|---|---|---|
| 1. United States v. Alam | 15-20351 | 135-168 | 101 months | Cox | 21 million |
| 2. United States v. Pierce | 16-20021 | 37-46 | 18 months | Murphy | 650K |
| 3. United States v. Soueid | 16-20547 | 78-97 | 42 months | Cohn | |
| 4. United States v. Daneshvar | 15-20362 | 37-46 | 24 months[2] | Cohn | |
| 5. United States v. Elhorr | 13-20158 | 51-63 | Probation | Edmunds | |
| 6. United States v. Nelson | 16-20328 | 292-365 | 108 months | Drain | |
| 7. United States v. Shah | 12-20450 | 57-71 | 24 months | Cleland | 8.8M |
| 8. United States v. Sharma | 12-20272 | 30-37 | Probation | Page Hood | 23M |
| 9. United States v. Tahir | 17-20069 | 121-151 | 72 months | Battani | 4.4M |

**Calculation of loss amount.**

When a doctor prescribes in home physical therapy it is typically for a few sessions per week for a set number of weeks. Medicare refers to the prescribed package of physical therapy sessions as an "episode". The amount billed to Medicare varies depending on the number of sessions actually occurring. For purposes of estimating loss amount we are using an average amount as being $3000 per episode.

Government witness Yu who worked for Mr. Shah identified 65 names as people she believed were brought to the practice by recruiters (people paid kickback for the referrals). (See Exhibit 11). At $3000 on average paid by Medicare for 65 episodes the loss amount for those named by Yu would come to $195,000 in benefits.

Similarly, government witness Murad said she was paid kickbacks by Mr. Shah for referring physical therapy patients to him and she identified 56 names. (See Exhibit 12). Using the $3000 average paid by Medicare for 56 episodes, the loss amount for those identified by Murad would come to $168,000.

---

[2] The Daneshvar case was a jury trial.

Government witness Kassab was interviewed and said Shah paid her referral fees for providing him with 7 patients. At $3,000 on average being paid by Medicare for 7 episodes, the loss amount for these patients identified by Kassab would come to $21,000.

Johnny Younan is another government witness who was paid kickbacks by many home health care providers in the Detroit area. The government has provided evidence that Mr. Shah paid $36,150 to Mr. Younan in kickbacks. (See Exhibit 13). Younan said he received $1000 from Mr. Shah for each patient so the payment received can be the basis to conclude he brought 36 patients. At $3000 on average paid by Medicare for 36 episodes, the loss amount would come to $144,150. The total loss amount should be based on the sum totaling these four sources of information. Adding those figures up comes to a total of $528,150. Under the guidelines 12 additional points should be added to the base offense level where the loss amount falls between $250,000 and $550,000.

### C. Acceptance of Responsibility

The Probation Department correctly decreased Mr. Shah's offense level pursuant to §3E1.1(a) by two levels for "clearly demonstrating acceptance of responsibility for the offense." The government, however, refused to move for the additional point for acceptance that occurs in 99.9% of the cases in this district, and the Probation Department accepted that refusal in computing Mr. Shah's guidelines.

Although § E1.1(b) provides that the third point for acceptance of responsibility only occurs "upon motion of the government stating that the defendant has assisted authorities…. By timely notifying authorities of his intention to enter a plea of guilty," courts are allowed to review the government's refusal to move for a reduction under this section to ensure that the refusal is "not arbitrary and capricious, but rather is rationally related to a legitimate Government

9

objective." *Wade v. United States*, 504 US 181, 185-87 (1992); *United States v. LeRose*, 219 F3d 335, 342 (4th Cir. 2000).

If the court determines that the government's refusal is either based on an unconstitutional ground or is not rationally related to a legitimate government end, it must grant the defendant relief. *Id.*

In this case, Mr. Shah's acceptance of responsibility meets the criteria set for in § 3E1.1. He pled guilty at the pretrial conference on May 17, 2018. The pretrial conference had previously been set for May 14 and May 15 but those dates were cancelled by the Court. This Court ordered the government on March 30, 2018 to provide Jencks material to counsel by May 4, 2018 so counsel could review the material with Mr. Shah and advise him how best to proceed. Shortly after receiving this material Mr. Shah and counsel concluded it was in his best interest to enter a guilty plea without a Rule 11 agreement, due to the dispute over loss amount and enhancement. A three level decrease in offense level should be granted for acceptance of responsibility.

### Defense View of Proper Guideline Calculation

| | | |
|---|---|---|
| Base Offense | 7 | |
| Loss Amount | 12 | ($250,000-$550,000) |
| Government Health Program | 3 | |
| Sophisticated means | 2 | |
| Organizer or leader | 0 | |
| Abuse of public trust | 2 | |
| Acceptance of Responsibility | -3 | |
| Total offense level | 23 | |

Criminal History Level I

23-I = 46-57 months

### A. Loss amount

The defense objects to the loss amount of $8,339,790. To begin with, that loss amount assumes that every dollar paid by Medicare to the Shah entities was based on a fraudulent claim. In fact, the vast majority of patients come to Mr. Shah from physician referrals where no referral fee or kickback was involved. Another source of patients was through health fairs which salaried marketers would attend monthly to find appropriate patients to grow the business. Defendant has accepted responsibility for those occasions where he was paying kickbacks and asserts that the loss amount should be calculated by adding up the benefit paid only for claims where kickbacks were involved. Through discovery the government has identified the patients who came to receive physical therapy as a result of payment of kickbacks. As stated above, the total received for providing these services comes to $528,150. Therefore, the assessment of loss amount attributable to him should result in a 12 point enhancement for an amount exceeding $250,000 but less than $550,000.

### B. Leadership Role 3B1.1(a)

The Probation Department assessed a 4 level leadership enhancement. Defendant Shah asserts that in this case, the individuals seeking and taking the kickbacks were the leaders, not Mr. Shah. As discovery showed, the two principal architects of the patient kickback arrangement were Lana Murrad and Johnny Younan. They were both convicted for fraud relating to the taking of kickbacks.

Before bringing patients to Exceptional Home Health Care, the business run by Defendant Shah, Lana Murrad recruited patients for Home Health Care Company (HHC), At

Home Network (AHN), VIP Home Care (VIP), Community Home Health Care (Community), and Prompt Care Home Health Services, Inc. (Prompt).

## Application of §3553 Factors Sentence Guidelines

Johnny Younan pled guilty to conspiracy to commit healthcare fraud (E.D. MI 15-20592). He recruited patients and collected kickbacks from multiple home care companies including Senior Link Home Care; Starlite Home Care; Mercy Home Care; Vital signs Home Care; Healing Touch Home Care; Michigan Home Health Care (MHHC); Precious Home Health Care; On Pointe Home Care; Prompt Home Care; Nexus Home Health Care; Capital Home Health Care; and At Home Network, as well as Defendant Shah's company.

Defendant Shah should not be assessed points for a leadership role in the offense.

## Nature and Circumstances of the Offense

Defendant concedes that health care fraud is a serious offense.

## History and Characteristics of the Defendant

Defendant Shah is 49 years old and has no criminal record. He got his college degree in Pakistan in 1994 and came to the United States one year later on a work visa. He was granted permanent resident status one year later and became a citizen in 2004. He lives in Oakland County with his wife and four children. He has been a state licensed physical therapist for almost 20 years.

## The Need to Protect the Public from Defendant

Defendant poses no current or future threat to the safety of the public.

## The Need to Afford Adequate Deterrence

The mere commencement of federal criminal charges against a licensed physical therapist is sufficient to provide general and specific deterrence to Mr. Shah and others.

## This Need to Avoid Creating Unwarranted Sentence Disparities

Ten years ago the government brought a Medicare kickback case before this Court charging eight defendants (See Exhibit 1). As outlined above, seven home health care providers were paying kickbacks to lead defendant Rebecca Sharp to refer individuals for treatment. All cases were settled without trial. Two were placed on diversion and ultimately dismissed (Exhibits 8 and 9). Five were given probation (Exhibits 3-7). The most culpable – in the view of the government – was the party who organized and solicited the scheme to receive kickbacks, Rebecca Sharp. She was sentenced to serve 18 months in prison. (Exhibit 2).

Defendant Shah is in a one person indictment, but the government's theory is that he conspired with two parties who organized and solicited the scheme to defraud, Sanna Kassab and Johnny Younan. They each pled guilty to fraudulent schemes to receive Medicare kickbacks. In *US v. Sanna Kassab*, she was convicted for soliciting kickbacks (USD Ct. #13-20364) for Medicare referrals for five different health care providers where the Medicare benefits paid for physical therapy was over seven million dollars. Judge Steeh sentenced her to 24 months.

Johnny Younan pled guilty to conspiracy to commit health care fraud (E.M. Mi 15-20592). He recruited patients and collected kickbacks from multiple home health care companies including Senior Link Home Care; Starlite Home Care; Mercy Home Care; Vital signs Home Care; Healing Touch Home Care; Michigan Home Health Care (MHHC); Precious Home Health Care; On Pointe Home Care; Prompt Home Care; Nexus Home Health Care; Capital Home Health Care; and At Home Network, as well as Defendant Shah's company. He was sentenced by Judge Tarnow to serve 24 months in prison. (USD Ct. #15-20592).

**Conclusion**

This Court should give little weight to the sentencing guidelines and give the greatest weight to the §3553 factor concerning the avoidance of sentencing disparities among individuals committing similar offenses. A substantial variance is called for to provide a sentence which is "sufficient but not greater than necessary" to comply with the criteria set forth in §3553(a).

Respectfully submitted,

Dated: 1/16/2019

/s/ Douglas R. Mullkoff
Douglas R. Mullkoff
Attorney for Defendant
402 West Liberty
Ann Arbor, Michigan 48103
(734) 761-8585
doug@kmhlaw.com
(P33252)

**CERTIFICATE OF SERVICE**

STATE OF MICHIGAN   )
                    ) ss:
COUNTY OF WASHTENAW )

I hereby certify that on the 16th day of January, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Rebecca Szucs and Howard Locker at the U.S. Attorneys Office.

/S/ Douglas R. Mullkoff
Attorney for Defendant
402 West Liberty
Ann Arbor, Michigan 48103
(734)761-8585
doug@kmhlaw.com
(P33252)