UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                                    Case Number 17-20467
v.                                                                Honorable David M. Lawson

ZAHIR SHAH,

                    Defendant.
_____/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Zahir Shah, who has served eleven months of an 84-month prison sentence for health care fraud, asks the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, and impose a period of supervised release equivalent to the remaining months of his prison term during which he would be confined to his home. The government contends that Shah has not exhausted his remedies within the Bureau of Prisons (BOP), a necessary prerequisite for seeking compassionate release, although the record shows that he did. But Shah has not demonstrated that extraordinary circumstances justify immediate release or that he qualifies for release under any other provision of section 3582(c)(1). The motion will be denied.

I.

Shah was a former licensed physical therapist and owned, operated and controlled several home health companies and a related transportation company all located throughout the Detroit metropolitan area. From approximately 2007 through 2017, Shah obtained business for his home health care agencies by paying bribes and offering kickbacks to patient recruiters in exchange for Medicare beneficiary information. He then used that information to bill Medicare. Most of

individuals for whom Shah submitted billing to Medicare were not in need of home health services. Shah also billed Medicare for services that were never provided.  He routinely instructed his employees to submit higher reimbursing billing codes to Medicare and to alter patient notes to indicate that home visits were conducted when they were not.  Shah was paid over $8 million on the fraudulent claims he submitted to Medicare.

On March 22, 2018, a federal grand jury charged Shah in a six-count first superseding indictment with one count of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, one count of conspiracy to pay and receive kickbacks in violation of 18 U.S.C. § 371, and four counts of paying kickbacks in connection with a federal health care program in violation of 42 U.S.C. § 1320a-7(b)(2)(A).  On May 17, 2018, two weeks before trial, Shah pleaded guilty to the conspiracy charge and one kickback count.  The Honorable Avern Cohn sentenced Shah to 84 months in prison.  A month later, Shah moved to extend his report date to December 31, 2019.  The Court extended his report date, but only until September 3, 2019.

Shah reported to FCI Morgantown in Morgantown, West Virginia on September 3, 2019. His projected release date is August 19, 2025.

Shah is 50 years old and is of Caucasian descent.  He has no prior criminal record.  He obtained his college degree in Pakistan in 1994 and came to the United States in 1995 on a work visa.  He was granted permanent status in 1996 and became a citizen in 2004.  He argues that because his personal health conditions predispose him to complications should he contract COVID-19, and the congregant conditions that are widespread in prison settings promote the spread of the novel coronavirus, he has established extraordinary and compelling reasons for reducing his sentence.  Shah says that he has type II diabetes, high blood pressure, and high cholesterol.  To date, the BOP's website has no reported cases of COVID-19 at FCI Morgantown.

If released, Shah says he will reside at his home with his wife and four children in West Bloomfield, Michigan.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

- 3 -

A.

The government contends that Shah has not exhausted his remedies.  It acknowledges that he submitted a letter to the warden at FCI Morgantown asking for compassionate release, and that 30 days elapsed before he filed his motion in this Court.  But the government argues that because Shah asked for reconsideration after his initial request was denied, he must run the gamut of available administrative procedures before he can be said to have fully exhausted his administrative remedies.

That is not how the Sixth Circuit sees it.  In *Alam*, the court read section 3882(c)(1)(A) as giving defendants two alternative tracks to federal court.  "[P]risoners who seek compassionate release have the *option* to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d at 834 (emphasis added).  Reading the statute's plain language, the court explained that the section "imposes a requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id.* at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf.  To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison." *Alam*, 960 F.3d at 833–34 (6th Cir. 2020) (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)).  And for those prisoners who choose to "pursue administrative review," they are not required to complete it before coming to federal court. *Id.* at 836.  "[P]risoners have the option to go to federal court" if they pursue administrative review and it "comes up short (*or if 30 days pass*)." *Id.* (emphasis added).

Shah submitted his request for compassionate release to the warden and waited the obligatory 30 days before he filed his motion in this Court.    He has satisfied section 3882(c)(1)(A)'s exhaustion requirement.

B.

Under that statute, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).    The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute.    The commentary adds gloss, which does not have the force of law.    *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release.    It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness.    But that requirement is a condition of 3582(c)(1)(A)(ii).    Shah has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant.    It is a factor incorporated in section 3551(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed.    *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant").    And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law,"

- 5 -

and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C).  These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Shah's crimes, although nonviolent, were serious.  He perpetrated a fraud scheme over several months that bilked the government out of over $8 million — funds that were earmarked to pay for the medical expenses of vulnerable and needy individuals through the Medicare program. Judge Cohn's sentence of 84 months reflects the seriousness of that offense.  As the Court undoubtedly imposed a sentence that was not greater than necessary to achieve congressional goals, reducing that sentence to less than a year in custody would not promote respect for the law or provide a just punishment for his crimes.  Nor would it serve as a significant deterrent to others who may be tempted to take advantage of a government program through fraud and abuse.  Shah posits that he is unlikely to violate the law again.  But he has a hefty restitution bill facing him, and he proposes to live at home with his wife, who owns a physical therapy clinic, and he intends to seek employment in that field again.  Shah has not offered a convincing argument for why he would not return to his former illegal methods.  Consideration of the factors in 18 U.S.C. § 3553(a) does not favor a sentence reduction, but they are not disqualifying.

To establish extraordinary and compelling reasons for the relief he requests, Shah points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19.  And he is understandably concerned about being infected with the coronavirus.  "The COVID-19 virus is highly infectious and can be transmitted easily from person to person.  COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe complications and death.  Because there is no current vaccine, the

Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

And it is widely recognized and publicly acknowledged that persons who are diabetic face increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing *Coronavirus Disease 2019 (COVID-19)*, People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The combination of diabetes and hypertension may further increase the risk of severe complications from potential infection. *Compare Malam v. Adducci*, --- F. Supp. 3d---, No. 20-10829, 2020 WL 2468481, at *7 (May 12, 2020) (ordering supplemental briefing) *with Perez-Perez v. Adducci*, --- F. Supp. 3d ---, No. 20-

10833, 2020 WL 2305276, at *3 (E.D. Mich. May 9, 2020) (granting petition for habeas corpus because defendant had hypertension and was housed in a facility with a confirmed case of COVID-19).

However, although his diabetes places him at higher risk of complications, Shah's medical records do not show any serious complications from his diabetes.  To the contrary, defendant's diabetes is being treated with medication and he is monitoring his blood sugar several times a day.  His medical records show normal blood pressure readings, with only a few exceptions, and only a slightly elevated total cholesterol number of 214.  (A total cholesterol of 200-239 is considered borderline to slightly elevated.  *See* https://www.healthline.com/health/high-cholesterol/levels-by-age#adults).  Notably, Shah's medical records do not contain a diagnosis for either high blood pressure or high cholesterol, nor has he been prescribed medications for either condition.

Shah's medical condition does not make him more susceptible to contracting the virus.  Infection comes from environmental factors.  And even though several BOP facilities have experienced a proliferation of confirmed COVID-19 cases, there are no reported cases of COVID-19 among the inmates at FCI Morgantown, and only one case among staff since the pandemic has become widespread in the broader population in February of this year.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons.  But the pandemic is a global phenomenon and some risk is inherent no matter where Shah resides, either at home or in prison.  He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement.  And Michigan has a significant number of confirmed COVID-19 cases.  Shah has not demonstrated "extraordinary and compelling reasons" to reduce his sentence to time served.

III.

Shah has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 48) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 4, 2020